**FILED**
**Nov 30, 2018**
**12:30 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT JACKSON

| | | |
|---|---|---|
| **STEVEN PRIDDY,** | ) | Docket No.  2018-07-0084 |
| **Employee,** | ) | |
| v. | ) | |
| **BARKER BROTHERS WASTE, INC.,** | ) | State File No. 80495-2017 |
| **Employer,** | ) | |
| and | ) | |
| **INDEMNITY INSURANCE COMPANY** | ) | Judge Amber E. Luttrell |
| **OF NORTH AMERICA,** | ) | |
| **Carrier.** | ) | |

## EXPEDITED HEARING ORDER DENYING REQUESTED BENEFITS

The Court held an Expedited Hearing on November 8, 2018, on Mr. Priddy's request for medical and temporary disability benefits. The legal issue is whether Mr. Priddy is likely to prevail at a hearing on the merits in establishing that he sustained a knee injury arising primarily out of and in the course and scope of his employment. For the following reasons, the Court holds Mr. Priddy did not meet his burden and denies his request.

### History of Claim[1]

Mr. Priddy drove a garbage truck for Barker Brothers Waste, Inc. (BBW). He drove a "side loader," which picked up trash from the right side of the truck using a mechanical arm. Mr. Priddy alleged that while working on October 13, 2017, he injured his left knee. BBW disputed Mr. Priddy's alleged injury date and contended he injured his knee at home the day before.

The parties disputed the details surrounding the alleged injury. However, it was undisputed that Mr. Priddy suffers from gout, a preexisting condition, which regularly "flares up" in different joints in his body, including his knees. The parties introduced medical records before October 2017, documenting Mr. Priddy's gout treatment in

---

[1] The hearing testimony and exhibits established the facts set forth in the History of Claim section.

1

various joints. The records specifically indicated Mr. Priddy was off work and sought treatment for gout in his left leg and knee on August 22, 2017, two months before his alleged injury. The gout caused pain, swelling, and difficulty walking and weight-bearing, and Mr. Priddy's physician kept him off work following that visit due to his symptoms.

At the hearing, Mr. Priddy provided the following details regarding his alleged injury. He reported to work around six o'clock a.m. on Friday, October 13, spoke to his supervisor, Charlie Hayes, and started his route. He acknowledged he was limping that morning but stated it was due to a gout flare up in his right foot. He denied any gout symptoms or problems in his left knee in the days leading up to his injury date. At nine o'clock, he serviced a home on a dead-end street in Milan, Tennessee. When he extended the mechanical arm on his truck to grab a customer's garbage container, the arm knocked it over instead. Mr. Priddy got out of his truck, picked up the trash and was lifting the heavy container off the ground when it fell back on him, causing his left knee to "hyperextend." He heard a "pop" and "crunch" and fell to the ground. Mr. Priddy stated he got up and sat on the bumper of his truck. He then climbed back in the truck and finished his route for the day.

Mr. Priddy acknowledged BBW's policy required him to immediately report work injuries to Mr. Hayes. However, he stated he did not do so because he thought his knee pain might be his gout flaring up. On his return trip to the shop, Mr. Priddy called his wife to pick him up because he was unable to weight-bear on his left knee.[2] He then called Jennifer Pratt, the scale operator, once he reached the shop to find someone to help him get out of his truck and into his wife's van.

Mr. Priddy initially testified he sought treatment over the weekend with his family physician, Dr. Michael Bryant, who instructed him to report his injury to his employer before treating. Mr. Priddy did not introduce any record from his visit that weekend and later testified that he did not seek any treatment until Monday, October 16. On Monday, Mr. Priddy and his wife drove to the shop, reported an injury to Mr. Hayes, and prepared an accident statement. Mr. Priddy's description of the accident in his statement varied somewhat from his testimony. In his statement, Mr. Priddy did not mention the heavy container falling back on him causing his knee to hyperextend and him to fall. Rather, he stated, "I got out to pick up the spilled trash, and when I stepped into the yard my knee was forced backwards. It was sunny and the ground not soft." (Ex. 4.) In his affidavit, Mr. Priddy's account varied again stating, "I rocked the barrel and due to its heavy weight it came back on me and while trying to control it, my knee buckled." (Ex. 7.) He explained that his attorney drafted the affidavit but acknowledged that he reviewed and signed it.

---

[2] Mr. Priddy referred to BBW's office location as "the shop."

2

BBW did not offer Mr. Priddy a panel, so he sought treatment on his own with Dr. Bryant and then with Dr. Eugene Gulish, an orthopedic specialist. According to Dr. Bryant's October 16 record, Mr. Priddy gave a history of joint pain in the "left knee after hyperextension of the knee while at work last Thursday, pain with increasing swelling occurred on Friday of last week." Dr. Bryant further noted, "Onset followed recent trauma (Thursday 10/12/17) he had left hyperextension injury, it did not swell immediately and he was able to weight-bear. On Friday, the pain progressively increased with associated swelling and pain to the point he was unable to weight-bear by end of the day." Dr. Bryant diagnosed acute left knee pain, ordered an MRI, and referred Mr. Priddy to an orthopedist. At the hearing, Mr. Priddy denied telling the doctor that he was injured on October 12.

The next day, Mr. Priddy saw Dr. Gulish, who noted Mr. Priddy "states he was unloading his truck when he hyperextended left knee joint-had immediate severe pain and swelling." In a subsequent record, Dr. Gulish documented Mr. Priddy's reported injury date as October 13. He eventually performed arthroscopic surgery and found significant gouty arthritis in the knee joint as well as a meniscus tear. Dr. Gulish provided follow-up care for swelling and weakness through May 2018. He commented that because of Mr. Priddy's gout, he would need a longer recovery time. Mr. Priddy testified he has not completed therapy because his insurance was cancelled.

In response to a causation letter from Mr. Priddy's counsel, Dr. Gulish stated, "On the MRI, Mister Priddy was found to have a torn medial meniscus. In my opinion this was caused by his work related injury. The trauma could have aggravated the gouty arthritis which of course preexisted the injury."

On cross examination, Mr. Priddy confirmed the accident happened at nine a.m. because he recalled arriving at the same house at that time each day. Counsel presented Mr. Priddy with his "Operator Activity Sheet" from October 13, which indicated his truck was on "downtime," meaning it was not operational from "7:55 a.m. to 8:55 a.m." Mr. Priddy did not explain the time discrepancy. (Ex. 6.) Mr. Priddy also denied any prior work injury to his left knee. When presented with a three-page BBW accident report documenting a similar reported left knee injury the year before on August 5, 2016, Mr. Priddy denied any recollection of the event. (Ex. 8.) In the 2016 report, Mr. Priddy reported, "I was servicing a cart and when I stepped down off the step I stepped on the edge of the pavement, and it snapped my knee back and I fell."

Mrs. Priddy also testified at the hearing. She testified consistently with her husband regarding picking him up from work because he was unable to walk and driving him to the shop on Monday to report an injury. Mrs. Priddy stated she did not take Mr. Priddy to the hospital after picking him up because "he had so many problems with gout and we did not know if it was a flare up or not." She stated she did not recall Mr. Priddy experiencing left knee symptoms before October 13.

3

BBW offered the testimony of Jennifer Pratt and Charlie Hayes to rebut Mr. Priddy's testimony. Ms. Pratt was the gate attendant/scale operator for BBW. Among other duties, she collected the drivers' daily activity logs and prepared end of the day reports to close the routes. She testified that on October 13, at 5:46 p.m., Mr. Priddy called her looking for the mechanic to help him out of his truck because his knee was hurting, swollen, and he could not walk. He told her he had hyperextended his knee at home the day before. Ms. Pratt stated Mr. Priddy did not tell her about any work injury on his route that day.

Mr. Hayes testified that on the morning of the alleged injury he noticed Mr. Priddy limping. He knew of Mr. Priddy's gout and asked him if it was flaring up. Mr. Priddy responded that he hurt his knee the day before. When Mr. Hayes asked him if he needed to fill out an accident report, Mr. Priddy said no, he hurt it at home and it was his gout. Mr. Hayes confirmed that he could still drive his truck, and Mr. Priddy started his route.

At the end of the work day, Mr. Hayes received a phone call from Ms. Pratt. She informed him that Mr. Priddy needed help getting out of his truck due to knee pain and could not fill out his daily paperwork. Mr. Hayes called Mr. Priddy that evening. According to Mr. Hayes, he again said he had hurt his knee the night before and he may have re-injured it servicing a customer. He also said it could be his gout. Mr. Hayes encouraged Mr. Priddy to see a doctor over the weekend and he agreed.

The next day, Mr. Hayes texted Mr. Priddy to see if he saw a doctor and if he would be able to work on Monday. Mr. Priddy responded, "They couldn't do anything for me they told me to keep taking my medicine and see my rumortolagist wensday my gout is deteariating my joints." (Ex. 5.) Mr. Priddy testified that he was not referring to his knee in the text. He stated he was experiencing a gout flare up in his right foot at that time and was referring to his foot. He acknowledged that he had not previously discussed his foot with Mr. Hayes and did not know why he would reach out to him over the weekend to ask about it. Mr. Hayes adamantly disputed Mr. Priddy's explanation and stated he was following up on the knee.

Mr. Hayes testified he next spoke to Mr. Priddy on October 16, when he and his wife came to the shop and reported a work injury on October 13. As Mr. Priddy completed the accident report, Mr. Hayes noted he indicated there were no witnesses and he could not remember many details.

Mr. Priddy denied telling Mr. Hayes or Ms. Pratt that he hurt his left knee on October 12 or that he was experiencing any gout symptoms in his left knee the morning of October 13.

4

## Findings of Fact and Conclusions of Law

Mr. Priddy need not prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. Instead, he must present sufficient evidence that he is likely to prevail at a hearing on the merits of his claim. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

*Analysis*

To be compensable, Mr. Priddy must show his alleged injury arose primarily out of and in the course and scope of his employment and was caused by an incident, or specific set of incidents, identifiable by time and place of occurrence. Further, he must show, "to a reasonable degree of medical certainty that [his alleged work injury] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14) (2016).

The preliminary question the Court must address is whether Mr. Priddy presented sufficient evidence to establish a specific incident to his left knee, identifiable by time and place of occurrence, on October 13, 2017. For the reasons below, the Court cannot find that he did.

First, the Court finds Mr. Priddy gave inconsistent accounts of his injury in his testimony, his accident report statement, and his affidavit. He testified that as he picked the heavy container off the ground, it fell back on him, causing his left knee to "hyperextend" and he heard a "pop and crunch" and fell to the ground. However, he indicated in his accident statement that when he got out [of the truck] to pick up spilled trash, he stepped into the yard and his knee was forced backward. There is no mention of a heavy garbage container falling back on him, causing his knee to bend back or him falling to the ground. Then in his sworn affidavit, he indicated he "rocked the barrel and due to its heavy weight it came back on me and while trying to control it, my knee buckled." Mr. Priddy attempted to explain the discrepancy in the affidavit by stating his attorney drafted it, but he admitted he signed it swearing to its accuracy.

Secondly, the Court finds both Mr. Hayes and Ms. Pratt credibly testified that Mr. Priddy told them he injured his knee the day before (October 12). The Court finds Mr. Hayes' testimony particularly compelling because he observed Mr. Priddy limping when he arrived to work on October 13 and they discussed his knee. On direct examination, Mr. Priddy did not disclose that he was limping that morning but later admitted it on cross-examination and attributed it to his right foot. Mr. Hayes testified that Mr. Priddy told him that morning that he hurt his left knee the day before. Mr. Hayes then asked if he needed to prepare an accident report, but Mr. Priddy said no, he hurt it at home and it was his gout. When Mr. Hayes called him that evening, Mr. Priddy again told him he hurt his knee the day before but may have re-injured it servicing a customer or it could be his

5

gout. They discussed Mr. Priddy seeing a doctor over the weekend.

The texts sent the next day support Mr. Hayes' version of the conversations. Mr. Hayes asked Mr. Priddy what the doctor said and he responded that they could not do anything for him, told him to keep taking his medicine and see his rheumatologist because his gout was deteriorating his joints. Mr. Priddy attempted to explain that he was referring to his right foot and *not* his left knee in the text. The Court finds this explanation unconvincing since Mr. Priddy acknowledged he never discussed his foot with Mr. Hayes. The Court also notes that Mr. Priddy gave conflicting testimony regarding whether he even saw a doctor that weekend. At first, he testified he saw Dr. Bryant that weekend who told him to report a work injury. Later, he testified that he first sought treatment on Monday.

Next, Mr. Priddy's histories to his doctors immediately following the alleged injury date are not consistent with his testimony. Dr. Bryant's October 16 record stated, "Onset followed recent trauma (Thursday 10/12/17) he had left hyperextension injury, it did not swell immediately and he was able to weight-bear. On Friday, the pain progressively increased with associated swelling and pain to the point he was unable to weight-bear by end of the day." Even if the Court accepted Mr. Priddy's testimony that Dr. Bryant recorded an incorrect date of injury, it still would not explain the inconsistency between Dr. Bryant's detailed narrative history and his testimony regarding how the injury occurred. The Court finds Dr. Bryant's record further supports Mr. Hayes' and Ms. Pratt's testimony.

The next day, Mr. Priddy saw Dr. Gulish who noted Mr. Priddy hyperextended his knee while unloading a truck. This history is also inconsistent with Mr. Priddy's testimony regarding his October 13 incident.

Finally, the Court finds it notable that only two months before Mr. Priddy's alleged injury he sought treatment for gout in his left leg and knee in August 2017 for very similar symptoms of pain, swelling, and trouble walking. According to the record, Mr. Priddy's symptoms were significant enough that he was off work at the time of the visit and his doctor kept him off work for at least two more days. Mr. Priddy did not mention this treatment in his testimony other than to admit he had previously sought treatment for gout in various joints and it does not appear he mentioned this to Dr. Gulish. Further, the Court notes that Mr. Priddy denied any prior injuries to his left knee, yet he reported to BWW a similar left knee injury just one year before.

Based on the foregoing and absent any persuasive proof to reconcile the inconsistencies in this case, the Court holds Mr. Priddy did not provide sufficient evidence that he would likely prevail at a hearing on the merits regarding the occurrence of a specific incident to his left knee on October 13, 2017. Accordingly, his request for benefits is denied.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Priddy's request for medical and temporary disability benefits is denied.

2. **This matter is set for a telephonic Status Hearing on Tuesday, December 18, 2018, at 9:00 a.m. Central Time. You must call toll-free at 855-543-5039 to participate in the hearing.**

ENTERED this the _30_ day of November, 2018.

_Amber Luttrell_

**Judge Amber E. Luttrell**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:
1. Wage Statement
2. Notice of Denial
3. Medical Records-Employer's Amended Table of Contents
4. Employee Statement
5. Text messages
6. Republic Services Operator Activity Sheet
7. Mr. Priddy's affidavit
8. August 5, 2016 injury report-(3 pages)
9. Charlie Hayes's timeline notes
10. Jennifer Pratt's statement
11. Driver Check-in form

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Response in Opposition to Expedited Hearing Request
5. Employer's Pre-Hearing Statement

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Order was sent to the following recipients by the following methods of service on this the _____ day of November, 2018.

| Name | Via Email | Service sent to: |
|---|---|---|
| Jeffrey P. Boyd, Esq., Attorney for Employee | X | jboyd@borenandboyd.com dmyles@borenandboyd.com |
| Steve Snyder, Esq., R. Scott Vincent, Esq., Attorneys for Employer | X | steve.snyder@mgclaw.com scott.vincent@mgclaw.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**